UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| TOMMY W. SENEGAL | * | CIVIL ACTION NO. 2:14-cv-3447 |
| | * | |
| | * | |
| v. | * | JUDGE MINALDI |
| | * | |
| SUDDENLINK COMMUNICATIONS, | * | |
| ET AL | * | MAGISTRATE JUDGE KAY |

**********************************************************************

## MEMORANDUM RULING

Before the court is a Motion to Dismiss (Rec. Doc. 12) filed by Universal Cable
Holdings, Inc., d/b/a/ Suddenlink Communications ("Suddenlink"), Cequel III Communications
I, LLC ("Cequel III"), Cebridge Acquisitions, L.P. ("Cebridge Acquisitions"), and Cebridge
Telecom LA, LLC ("Cebridge Telecom") (hereinafter collectively referred to as the
"Defendants"). The Plaintiff, Tommy W. Senegal, filed an Opposition (Rec. Doc. 14), and
Defendants filed a Reply (Rec. Doc. 15). For the following reasons, the motion is **GRANTED
IN PART** and **DENIED IN PART**.

### FACTS & PROCEDURAL HISTORY

Senegal, who is an African-American male, has worked for various owners of the Lake
Charles cable system for over twenty-one (21) years.[1] In 2006, Suddenlink acquired the Lake
Charles cable system, and in March 2006 it hired Senegal as a Field Services Supervisor.[2] In
September 2010, Senegal's immediate supervisor, Ray Smith, resigned.[3] According to Senegal,
over the next six or seven months he assumed the primary responsibilities of his former
supervisor in a provisional capacity.[4]

---

[1] Compl. (Rec. Doc. 1) ¶¶ 5, 12.
[2] *Id.* ¶¶ 11-12.
[3] *Id.* ¶ 13.
[4] *Id.*

Shortly after Smith's resignation, Suddenlink posted the job vacancy online.[5] On September 12, 2010, Senegal emailed Robert Lee, Suddenlink's then Director of Business Operations, and notified Lee of his desire to be considered for the vacancy.[6] Senegal submitted an online application for the position on September 20, 2010.[7] In March 2011, Kimberly LaPoint, Suddenlink's then Systems Manager, informed Senegal that he would not be interviewed for the position because he did not have adequate "Headend"[8] experience.[9]

LaPoint interviewed approximately five candidates for the position, and ultimately selected Larry Crochet to fill the vacancy.[10] Crochet, who is a Caucasian male, had been employed by Suddenlink as a Field Services Supervisor for approximately six to nine months at the time he was selected.[11] According to Senegal, Crochet only applied for the position after various Suddenlink personnel, including LaPoint, implored him to do so.[12] Senegal alleges that Crochet had substantially less "Headend" experience than he did.[13]

On July 14, 2011, Senegal filed a report with EthicsPoint, Inc., a third-party regulatory compliance provider hired by Suddenlink to facilitate internal resolution of employee complaints.[14] In the report, Senegal stated that he felt he "was not given the opportunity to promote because of [his] race . . . ."[15] On August 9, 2011, Senegal met with Eva Jones, Suddenlink's then Director of Human Resources for the MidSouth Region, to discuss the

---

[5] *Id.* ¶ 14.
[6] *Id.* ¶ 15.
[7] *Id.* ¶ 16.
[8] "A cable system's 'Headend' is its facility for receiving, processing, and distributing cable signals to its customers." *Id.* ¶ 17 n. 3.
[9] *Id.* ¶ 17.
[10] *Id.* ¶¶ 18-19.
[11] *Id.* ¶¶ 19-20.
[12] *Id.* ¶ 22.
[13] *Id.* ¶ 21.
[14] *Id.* ¶ 23.
[15] *Id.*

report.[16] Senegal alleges that Jones stated he was not allowed to interview for the position because he was a "troublemaker," and at no time was his supposedly inadequate "Headend" experience discussed.[17]

On August 15, 2011, Senegal filed a charge (#461-2011-01873) with the United States Equal Employment Opportunity Commission ("EEOC") against Suddenlink of discrimination on the basis of race, disability, and retaliation.[18] Senegal asserts that he nonetheless continued to experience discrimination, including retaliation and constructive discharge.[19] In November 2011, Senegal filed an additional charge of discrimination for retaliation (#461-2012-00227) with the EEOC.[20] Senegal alleges he was constructively discharged on March 22, 2012.[21] Senegal received a Notice of Right to Sue on September 17, 2014,[22] and he filed suit on December 16, 2014.[23] On March 9, 2015, Defendants filed the present motion.[24]

## LAW & ANALYSIS

Motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure seek the dismissal of an action for failure to state a claim and challenge the sufficiency of a plaintiff's allegations. *See* FED. R. CIV. PRO. 12(b)(6). In the Fifth Circuit, Rule 12(b)(6) motions to dismiss are generally viewed with disfavor and should rarely be granted. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (quoting *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[16] *Id.* ¶ 24.
[17] *Id.* ¶ 26.
[18] *Id.* ¶ 27.
[19] *Id.* ¶ 28.
[20] *Id.* ¶ 29
[21] Memo. in Opp'n to Defs.' Partial Mot. to Dismiss (Rec. Doc. 14), at 6.
[22] Compl. (Rec. Doc. 1) ¶¶ 27, 29.
[23] *See* Compl. (Rec. Doc. 1).
[24] Mot. to Dismiss (Rec. Doc. 12).

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

CONSTRUCTIVE DISCHARGE CLAIMS

Defendants assert that Senegal failed to plead sufficient facts to state a claim upon which relief can be granted for his constructive discharge claims under 42 U.S.C. § 1981 and Title VII, and that he failed to exhaust his administrative remedies with respect to the Title VII constructive discharge claim. Senegal argues that his complaint sufficiently pleaded the claims, and that he exhausted his administrative remedies because he was constructively discharged in March 2012 before the EEOC began its investigations in December 2012.

Title VII requires employees to exhaust administrative remedies by filing a charge with the EEOC before seeking relief in a court of law. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). In order to preserve the administrative process and advocate conciliation over litigation, courts "should not condone lawsuits that exceed the scope of EEOC exhaustion." *Id.* However, to protect uneducated workers, "the scope of an EEOC charge should be liberally construed for litigation purposes." *Id.* Thus, when evaluating administrative exhaustion, the court asks "whether the charge 'stated sufficient facts to trigger an EEOC investigation and to put an employer on notice of the existence and nature of the charges.'" *Vicknair v. La. Dept. of Public Safety & Corr.*, 555 F. App'x 325, 332 (5th Cir. 2014) (quoting *Simmons-Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 272-73 (5th Cir. 2013)).

4

Senegal filed two charges with the EEOC,[25] the first of which alleged discrimination based on race, disability, and retaliation, and the second of which alleged discrimination based on retaliation.[26] Neither charge included an allegation of constructive discharge. Moreover, Senegal's charges contain insufficient factual allegations to trigger an EEOC investigation and to put Suddenlink on notice of the existence and nature of a constructive discharge claim. Thus, Senegal failed to exhaust the administrative remedies and is precluded from raising the Title VII constructive discharge claim.

Nonetheless, the court must still address the § 1981 constructive discharge claim. To prevail on a claim of constructive discharge, Senegal must establish that the "employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." *Culbert v. Cleco Corp.*, 926 F. Supp. 2d 886, 898 (W.D. La. 2013), *aff'd*, 538 F. App'x 504 (5th Cir. 2013) (quoting *Faruki v. Parsons, S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997)). The various factors courts have considered in constructive discharge claims include:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; (6) reassignment to work under a younger [or less experienced/qualified] supervisor; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Id.* The proper inquiry is whether "an objectively reasonable person would have been compelled to resign, and *not* whether the plaintiff had, in fact, felt compelled to resign." *Smith v. Aaron's Inc.*, 325 F. Supp.2d 716, 727 (E.D. La. 2004) (quoting *McCann v. Litton Sys., Inc.*, 986 F.2d 946, 951 (5th Cir. 1993)). Senegal has not alleged facts implicating any of the factors typically

---

[25] Even though this is a 12(b)(6) motion , the court will consider these documents because they were referenced in the complaint and they are undisputed.
[26] Ex. A, EEOC Charges (Rec. Doc. 12-3).

considered by the courts, nor has he indicated that Suddenlink created an environment so intolerable that a reasonable employee would have felt compelled to resign. Thus, the court finds that Senegal failed to sufficiently plead his § 1981 constructive discharge claim.

Federal Rule of Civil Procedure 15 empowers the court to grant a party leave to amend a complaint "when justice so requires." FED. R. CIV. PRO. 15(a)(2); *see also Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 478 (5th Cir. 2013) (citations omitted). District courts possess broad discretion in determining whether to permit amended complaints. *Crostley v. Lamar Cnty., Texas*, 717 F.3d 410, 420 (5th Cir. 2013) (citing *McLean v. Int'l Harvester Co.,* 817 F.2d 1214, 1224 (5th Cir.1987)). Senegal's constructive discharge claims falls short of the plausibility standard created by *Twombly* and *Iqbal*. However, the granting of a motion to dismiss for failure to state a claim should not be liberally granted, and there is no compelling reason to deny Senegal leave to amend his complaint in regard to his 42 U.S.C. § 1981 constructive discharge claim.

RETALIATION CLAIMS

Defendants argue that Senegal's retaliation claims should be dismissed because he failed to plead sufficient facts to state a claim upon which relief can be granted. Senegal responds that paragraphs twenty-three (23) through twenty-nine (29) of his complaint are sufficient to support his claims of retaliation, and in the alternative, Senegal requests that the court grant leave so that he may amend his complaint.

To state a claim of retaliation, Senegal must allege facts which establish that: (1) he engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Nelson v. Lake Charles Stevedores, L.L.C.*, No. 2:11-CV-1377, 2014 WL 1339827, at *8 (W.D. La. Apr. 2, 2014)

(quoting *Royal v. C.C.C. & R. Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013)). In the context of retaliation, the United States Supreme Court defines the second element, adverse employment action, as an action that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). The standard for satisfying the causation element at the prima facie stage is "much less stringent than a but for causation standard," but the plaintiff must "produce *some* evidence of a causal link between the protected activity and the adverse employment action." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F. 3d 376, 385 (5th Cir. 2003) (citations omitted) (internal quotations marks omitted).

Senegal alleges that subsequent to the filing of the first EEOC charge, he "continued to experience discrimination, including retaliation." This conclusory statement cannot give rise to an entitlement to relief. Moreover, the alleged denial of promotion is also insufficient to claim retaliation. The filing of the EthicsPoint report, the meeting with Suddenlink personnel on August 9, 2011, and the filing of both EEOC charges could not have caused the alleged denial of promotion because they all occurred afterwards. The only allegation that could possibly have a causal link with the denial of the promotion is that Senegal was known as a "troublemaker." Jones' assertion that Suddenlink did not promote Senegal because he was a "troublemaker" is not enough to state a claim that is plausible on its face. Once again, however, there is no compelling reason to deny Senegal leave to amend his complaint in regard to his retaliation claims.

### STATE LAW CLAIMS

Senegal alleges violations of Louisiana Civil Code articles 2315, 2316, 2317, and 2329, and violations of the Louisiana Human Rights Act ("LHRA"), LA. REV. STAT. §§ 51:2231, *et seq*. It is a well-established principle of statutory construction "that when there is both a general

law and a specific law that address the same subject matter, the more specific legislative enactment should govern." *Gluck v. Casino Am., Inc.*, 20 F. Supp. 2d 991, 994 (W.D. La. 1998). Consequently, courts have found that under Louisiana law, there is no general tort liability for employment discrimination. *Id.; see also Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 669-70 (E.D. La. 2014). Thus, the claims arising out of Louisiana Civil Code articles 2315, 2316, 2317, and 2329 are dismissed.

Defendants argue that the race discrimination claim is properly raised under the Louisiana Employment Discrimination Law ("LEDL"), LA REV. STAT. §§ 23:301, *et seq.*, not the LHRA. The LEDL states that "[i]t shall be unlawful discrimination in employment for an employer to . . . intentionally discriminate against[] any individual because of his race . . . ." LA. REV. STAT. ANN. § 23:332; *see also Smith v. Diamond Offshore Mgmt. Co.*, No. 03-2024, 2003 WL 23095586, at * 5 (E.D. La. Dec. 23, 2003) ("[T]he provisions of the [LHRA] making employment discrimination [illegal] were repealed and replaced, in 1997, with the [LEDL]"). Regardless of whether the state claims arise under the LEDL or the LHRA, those claims have prescribed. Section 23:303(D) of the LEDL provides for a one-year prescriptive period for all claims, which may be suspended for a period of up to six months during any administrative review or investigation of the claim. LA. REV. STAT. ANN. § 23:303(D). Any claims which are properly raised under the LHRA are subject to a one-year prescriptive period. *See Johnson v. Harrah's Entm't, Inc.*, No. 04-331, 2005 WL 3541139, at *5 (E.D. La. Nov. 16, 2005). Senegal filed his lawsuit on December 16, 2014, well over eighteen months after the last alleged act of discrimination in November 2011. Thus, Senegal's state law claims are dismissed.

DEFENDANTS

Finally, Defendants argue that Cequel III, Cebridge Acquisitions, and Cebridge Telecom should be dismissed because Senegal has failed to demonstrate that any of those entities was a current or former employer of Senegal. In his opposition, Senegal concedes that his paychecks came from Universal. At this time, the court finds there is insufficient evidence to demonstrate that Cequel III, Cebridge Acquisitions, or Cebridge Telecom ever employed Senegal. However, the claims against Cequel III, Cebridge Acquisitions, and Cebrigde Telecom are dismissed without prejudice so that Senegal may reinstate them if he provides further evidence that they ever employed him.

Lake Charles, Louisiana, this _10_ day of _February_, 2016.

_____
PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE